17 P.3d 219

**Colleen D. TAM, Claimant–Appellant,**

v.

**KAISER PERMANENTE, Employer–Appellee, Self–Insured.**

No. 22838.

Supreme Court of Hawai'i.

Feb. 8, 2001.

Herbert R. Takahashi and Rebecca L. Covert, Honolulu, (of Takahashi, Masui & Vasconcellos), on the briefs, for claimant-appellant Colleen D. Tam.

Roland Q.F. Thom and Rock B. Ley, Honolulu, (of Char Hamilton Campbell & Thom), on the briefs, for employer-appellee, self-insured Kaiser Permanente. .

MOON, C.J., LEVINSON, NAKAYAMA, RAMIL, and ACOBA, JJ.

Opinion of the Court by LEVINSON, J.

The claimant-appellant Colleen D. Tam appeals from the decision and order of the State of Hawai'i Labor and Industrial Relations Appeals Board (LIRAB), filed on September 3, 1999, affirming the September 19, 1995 decision of the director of labor and industrial relations ("the Director") suspending Tam's workers' compensation benefits until she complies with the Director's order to submit to a medical examination requested by the employer-appellee Kaiser Permanente. On appeal, Tam argues that the LIRAB erred in: (1) affirming the validity of the Director's "medical examination order" because (a) Kaiser failed to comply with the statutory and regulatory requirements for requesting an independent medical examination embodied in Hawai'i Revised Statutes (HRS) § 386–79 (1993 & Supp.1999)[1] and

1. HRS § 386–79 (1993) provided:

**Medical examination by employer's physician** After an injury and during the period of disability, the employee, whenever ordered by the director of labor and industrial relations, shall submit oneself to examination, at reasonable times and places, by a duly qualified physician or surgeon designated and paid by the employer. The employee shall have the right to have a physician or surgeon designated and paid by the employee present at the examination, which right, however, shall not be construed to deny to the employer's physician the right to visit the injured employee at all reasonable times and under all reasonable conditions during total disability.

If an employee refuses to submit oneself to, or in any way obstructs, such examination, the employee's right to claim compensation for the work injury shall be suspended until the refus-

al or obstruction ceases and no compensation shall be payable for the period during which the refusal or obstruction continues.

In cases where the employer is dissatisfied with the progress of the case or where major and elective surgery, or either, is contemplated, the employer may appoint a physician or surgeon of the employer's choice who shall examine the injured employee and make a report to the employer. If the employer remains dissatisfied, this report may be forwarded to the director.

Effective June 29, 1995, HRS § 386–79 was amended to add the following provision:

Employer requested examinations ordered by the director under this section shall not exceed more than one per case unless good and valid reasons exist with regard to the medical progress of the claimant's treatment. The cost of conducting the medical examina-

Hawai'i Administrative Rules (HAR) Rule 12–10–75[2] and (b) the record before the Director did not warrant the issuance of a medical examination order; (2) ruling that the June 29, 1995 amendment to HRS § 386–79, *see supra* note 1, did not affect the enforceability of the Director's order; (3) affirming the Director's decision to suspend Tam's benefits, inasmuch as the medical examination order was constitutionally defective and, therefore, unenforceable, in that HAR § 12–10–75(c), *see supra* note 2, precluded her from contesting the validity of the medical examination order before she was required to submit to the examination in violation of her right to due process of law; and (4) denying her request for a subpoena, inasmuch as the fact of an *ex parte* communication from the Director to Kaiser entitled her to investigate the possibility of other communications of the same sort.

◼ We hold: (1) that the LIRAB's finding that Kaiser sufficiently complied with the requirements of HAR § 12–10–75(b) is consistent with the language of the regulation and is entitled to our deference as the agency's interpretation of its own rule, *see Camara v. Agsalud,* 67 Haw. 212, 216, 685 P.2d 794, 797 (1984); (2) that, although the LIRAB did not expressly find that the medical examination ordered by the Director "would assist in an expedient disposition of the case," such a finding is implied in its conclusion that the facts in the file on April 13, 1995 supported the issuance of the medical examination order "to obtain a permanent

rating so as to address the issue of permanent disability" and that Tam failed to carry her burden of convincingly demonstrating that the Director's order violated HAR § 12–10–75(c), *see In Re Gray Line Hawai'i, Ltd.,* 93 Hawai'i 45, 53, 995 P.2d 776, 784 (2000) ("a presumption of validity is accorded to decisions of administrative bodies acting within their sphere of expertise and one seeking to upset the order bears the heavy burden of making a convincing showing that it is invalid because it is unjust and unreasonable in its consequences") (quoting *In Re Application of Puhi Sewer & Water Co., Inc.,* 83 Hawai'i 132, 137, 925 P.2d 302, 307 (1996)) (citation and internal quotation signals omitted); (3) that the order to undergo a medical examination did not deprive Tam of any property interest in worker's compensation benefits protected by the right to due process, *see Findley v. Workers' Compensation Appeal Board,* 707 A.2d 1220, 1223 (Pa. Commw.Ct.1998), and that the agency hearing conducted prior to the suspension of her benefits afforded her procedural safeguards adequate to satisfy the requisites of constitutional due process, *cf. Sauceda v. Department of Labor & Industries of the State of Washington,* 917 F.2d 1216, 1219 (9th Cir. 1990); *Carr v. SAIF Corp.,* 65 Or.App. 110, 670 P.2d 1037, 1046 (1983); (4) that Tam's assertion of possible undisclosed *ex parte* communications between Kaiser and the agency is speculative and that the LIRAB's decision to deny her requested subpoena was not arbitrary and was supported by the rec-

---

tion shall be limited to the complex consultation charges governed by the medical fee schedule established pursuant to section 386–21(c).

1995 Haw. Sess. L. Act 234, § 13 at 613. A further amendment to HRS § 386–79 in 1996 slightly modified the statute's language without making any substantive changes. *See* HRS § 386–79 (Supp.1999).

**2.** HAR Rule 12–10–75, as promulgated by the Director in 1985, and amended effective December 8, 1994, provides in relevant part:

**Medical examination orders and reports.** (a) Orders requiring the injured employee to appear for examination by the physician of the employer's choosing may be issued by the director.

(b) The employer shall submit a request in writing to the director *and the injured employee*

*twenty calendar days before the scheduled medical examination date.* The request shall also include *the purpose of the examination, justification for the order,* the name of the physician, *and* time, date, and place of the examination.

(c) The director, upon review of the case file and without necessity of hearing, and upon finding that the examination will assist in the expedient disposition of the case or in determining the need for or sufficiency of medical care or rehabilitation, shall issue a medical examination order. The order shall not be appealable and will inform the claimant that compensation may be suspended for failure to submit to the examination *without good cause. The injured employee may be responsible for a reasonable no-show fee not to exceed $250 charged by the physician.*

(Emphasized text added in 1994.)

ord, *see Bank of Hawaii v. Shaw,* 83 Hawai'i 50, 59, 924 P.2d 544, 553 (App.1996) ("On review, the action of a trial court in enforcing or quashing the subpoena will be disturbed only if plainly arbitrary and without support in the record.") (Citations omitted.); and (5) that, even though the LIRAB erred in failing to give retrospective effect to the June 29, 1995 amendment to HRS § 386–79, *see supra* note 1, the error was harmless, inasmuch as the reasons given by the Director for ordering the repeated medical examination were related to "the medical progress of [Tam's] treatment." Accordingly, we affirm the LIRAB's decision and order.

## I. *BACKGROUND*

On December 14, 1990, Tam was employed as a registered nurse in the inpatient nursing department of Kaiser Foundation Hospital.[3] On that day, Tam sustained a lower back injury at work when she slipped and almost fell off a high stool. Initially, the symptoms did not appear to be serious, but within a few days the pain in Tam's lower back and right leg became severe. Tam first saw a Kaiser physician in connection with her injury on December 22, 1990. She was off work commencing January 1, 1991 and continued to receive medical treatment, first from Kaiser physicians and later from an independent physician.

Kaiser accepted liability for Tam's injury in its "Employer's Report of Industrial Injury," Department of Labor and Industrial Relations (DLIR) Form WC–1, filed on January 22, 1991. Tam began receiving physical therapy on March 28, 1991. She returned to work on May 26, 1991, but the activity of pushing and pulling cribs, which entailed frequent bending, aggravated her condition, and she was off work again by the end of July 1991. On August 28, 1991, she attempted working as a quality assurance nurse, but the prolonged sitting required by that position aggravated her symptoms. The progress of Tam's physical therapy and treatment was slow and, in a letter to Kaiser dated March

30, 1992, Tam's physician opined that she would not be able to return to her previous job.

On June 3, 1992, Kaiser informed Tam that it wished to exercise its prerogative, pursuant to HRS § 386–79 (1993), *see supra* note 1, to have her examined by a physician of its choice. On June 12, 1992, Tam's physician noted that her condition was improving, but that she (1) was unable to lift over ten pounds, (2) was uncomfortable (a) sitting or standing for any prolonged period of time or (b) repeatedly bending or reaching, and (3) had begun to receive vocational rehabilitation services. On her physician's recommendation, Tam's physical therapy was discontinued on June 18, 1992. On June 13, 1992, Kaiser requested that the DLIR issue a medical examination order, pursuant to HAR Rule 12–10–75, *see supra* note 2, to compel Tam to appear for an examination to be performed by Herbert K.N. Luke, M.D., on August 5, 1992. Kaiser stated that "[w]e are requesting issuance of [a medical examination] order to determine if the employee's medical condition has stabilized." The DLIR issued the requested order on July 7, 1992.

On August 20, 1992, at her attorney's behest, Tam was examined by Thomas H. Sakoda, M.D., for the purpose of obtaining a permanent impairment rating for her back injury. Dr. Sakoda noted that his initial findings were varied and inaccurate due to the fact that Tam's pain gradually increased during testing and her motor capacity was limited. However, her condition stabilized over the course of the examination, producing results that were sufficiently consistent to satisfy Dr. Sakoda. Based on these results, Dr. Sakoda rated Tam's overall impairment in connection with her low back injury to be twenty-nine percent of the whole person. Kaiser obtained Dr. Sakoda's report by way of records deposition conducted on July 15, 1994.

Dr. Luke examined Tam on August 26, 1992, pursuant to the DLIR's July 7, 1992 order. Dr. Luke noted that Tam's "ranges

---

**3.** Tam's employer is variously identified as "Kaiser Foundation Hospital" or "Kaiser Permanente" in the record. The "Employer's Report of Industrial Injury," Form WC–1, recites "Kai-

ser Foundation Hosp." as the "Employer Name." Kaiser asserts that the designation "Kaiser Permanente" in the caption of the case is inappropriate.

of motion of the low back are quite restricted and unfortunately, they do not meet the validity criteria for rating purposes." Dr. Luke requested that Tam return for x-rays and to "recheck her ranges of motion," but, in a telephone conversation with Dr. Luke on August 28, 1992, Tam stated that, on her attorney's advice, she would not return. Dr. Luke's report concluded that, "[a]s she did not meet the validity criteria, the best that one could do is to allow 5% impairment of the whole person for soft tissue injury."

On October 12, 1992, Tam's physician noted that her condition remained unchanged. On March 22, 1993, Kaiser requested a hearing in the DLIR in order to resolve the extent of Tam's permanent partial disability. After reviewing the record, including Dr. Luke's report, the DLIR ruled that Kaiser's request was premature, in light of the fact that Tam was participating in a vocational rehabilitation program.

On July 5, 1994, Tam returned to full-time work with another employer, whereupon her temporary total disability benefits terminated. On August 18, 1994, Tam's physician reported that her condition remained unchanged and that she was "surviving at her present job simply because desire is overcoming fatigue and pain ... through sheer determination against the more reasonable dictates of medicine and good health"; in Tam's physician's view, "she should not work over a 24 hour week."

On April 3, 1995, Kaiser requested that the DLIR issue a second medical examination order to compel Tam to submit to an examination by Maurice W. Nicholson, M.D., explaining as follows: "We do not believe that there are any facts in controversy which affect the finding that the examination will facilitate the expedient disposition of the case or the present controversy regarding Claimant's entitlement to compensation." On April 5, 1995, the DLIR returned the request to Kaiser without action, directing Kaiser to "attempt to have claimant examined without an order."

On April 7, 1995, Kaiser renewed its request, responding to the DLIR's April 5, 1992 communication as follows:

Claimant was previously examined by Herbert K.N. Luke, M.D. at the request of Employer but, as Claimant would not agree to the examination by Dr. Luke, an order by the Director was required. Claimant's counsel even took the extraordinary measure of appealing the Director's order to the Labor and Industrial Relations Appeals Board, although Claimant later withdrew her appeal. Although Claimant attended the August 26, 1992 examination by Dr. Luke under Order by the Director, Claimant failed to complete her examination and, at the recommendation and advice of her attorney, according to Claimant, would not submit to diagnostic x-ray testing. (See page 8, August 28, 1992 report of Dr. Luke attached hereto.) Thus, we have taken the precaution to timely request issuance of an order by the Director so that Claimant will attend the April 27, 1995 examination by Dr. Nicholson which is needed to complete Employer's investigation of this case.

Kaiser copied Tam's counsel regarding both of its April 3 and April 7 letters to the DLIR.

On April 13, 1995, the Director issued the medical examination order that Kaiser sought, finding Kaiser's April 7, 1995 request to be "reasonable" "after a review of the file." The order notified Tam that, should she refuse to submit to the examination, her "right to claim compensation may, after hearing by the Director, be suspended." On April 23, 1995, Tam informed Kaiser that she had "chosen not to attend the [medical examination] ... ordered by the Director," indicating that she would pursue an appeal.

On May 2, 1995, Kaiser requested that the DLIR suspend Tam's eligibility for workers' compensation benefits for failure to comply with the medical examination order, as mandated by HRS § 386–79, see supra note 1. The DLIR conducted a hearing regarding Kaiser's request on July 26, 1995. In a decision dated September 19, 1995, the Director rejected Tam's arguments that (1) Kaiser's request for a medical examination order was defective, inasmuch as it did not state the purpose and justification of the request with specificity, (2) the DLIR's order was defective for similar reasons, (3) a medi-

cal examination order may not be justified by a need for a permanent impairment rating, and (4) the current law did not entitle Kaiser to more than one medical examination order. Accordingly, the Director ruled as follows:

Upon review of the matter, the Director finds that the [medical examination] order of April 13, 1995 is proper and predicated upon adequate foundation and as such constitutes a legal and proper order.

The Director, upon review of the employer's [medical examination] order request and in light of customary procedure, finds such request to have adequate purpose and reasonable foundation. As the employer is entitled to have the claimant examined by a physician for purposes of determining permanent impairment, at the time of said report [sic], the mechanism of [a medical examination] order was the proper method for affirming the employer's rights. . . .

Accordingly, claimant's benefits shall be suspended until such time as the claimant complies with the Director's Order of April 13, 1995.

Tam appealed the Director's decision to the LIRAB on September 21, 1995.

On December 9, 1997, Tam attempted to subpoena the administrator of the DLIR's Disability Compensation Division, two members of Kaiser's staff, and Kaiser's counsel. In a memorandum filed on February 9, 1998, Tam argued that the subpoenas were necessary in order to discover any *ex parte* communications between Kaiser and the DLIR, other than the form letter of April 5, 1995 from DLIR to Kaiser mentioned *supra*, and thereby gather evidence of bias on the DLIR's part in issuing the April 13, 1995 medical examination order. On February 12, 1998, the LIRAB issued an order denying Tam's subpoena request.

The LIRAB heard Tam's appeal on March 20, 1998. On September 3, 1999, the LIRAB issued a decision and order, which affirmed the Director's September 19, 1995 decision, and stated in relevant part as follows:

The sole issue on appeal is whether the Director erred in suspending Claimant's

benefits until such time as she complies with the Director's April 13, 1995 Order.

. . . .

9. The Director issued the April 13, 1995 Order under the governing law, HRS § 386–79 and § 12–10–75 of the Hawai[']i Administrative Rules Relating to Workers' Compensation (Rules), in effect on April 13, 1995.

HRS § 386–79 requires an injured employee, whenever ordered by the Director, to submit to an examination by the employer's physician.

. . . .

11. Contrary to the Claimant's contentions, we find that Employer has met the requirements of HRS § 386–79 and § 12–10–75(b) of the [HAR]. Employer initially requested the issuance of the medical examination order because of Claimant's refusal to attend and then complete Dr. Luke's examination and to facilitate the expedient disposition of the case. Employer's April 7, 1995 letter gave the purpose of the examination with Dr. Nicholson and the justification for the order. At the Disability Compensation Division hearing, Employer clarified that the purpose of the examination with Dr. Nicholson was to address the issue of permanent disability.

Although Employer's April 7, 1995 letter did not specifically state that the purpose of the examination was to obtain a permanent impairment rating so as to address the issue of permanent disability, we find that there were facts in the file on April 13, 1995 to support the issuance of the Director's Order. Furthermore, the examination of Claimant by Dr. Nicholson would not have been unreasonable or inappropriate, since Dr. Luke had been unable to complete his examination.

12. The Director's April 13, 1995 Order, requiring Claimant to appear for the examination with Dr. Nicholson on April 27, 1995, was valid and proper.

. . . .

15. The Director properly suspended Claimant's benefits after April 26, 1995, until she complies with the Director's April 13, 1995 Order, because Claimant refused

to submit to the examination with Dr. Nicholson ordered by the Director.

Tam timely appealed the LIRAB's decision and order to this court.

## II. *STANDARD OF REVIEW*

■ Appellate review of the LIRAB's decision is governed by [HRS] § 91–14(g) (1993), which provides:

Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:

(1) In violation of constitutional or statutory provisions; or

(2) In excess of the statutory authority or jurisdiction of the agency; or

(3) Made upon unlawful procedure; or

(4) Affected by other error of law; or

(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

HRS § 91–14(g). "Under HRS § 91–14(g), [conclusions of law (COLs) ] are reviewable under subsections (1), (2), and (4); questions regarding procedural defects are reviewable under subsection (3)[.]" *Potter v. Hawai'i Newspaper Agency,* 89 Hawai'i 411, 422, 974 P.2d 51, 62 (1999) (quoting *Korean Buddhist Dae Won Sa Temple v. Sullivan,* 87 Hawai'i 217, 229, 953 P.2d 1315, 1327 (1998) (quoting *Konno v. County of Hawai'i,* 85 Hawai'i 61, 77, 937 P.2d 397, 413 (1997) (quoting *Bragg v. State Farm Mutual Auto. Ins.,* 81 Hawai'i 302, 305, 916 P.2d 1203, 1206 (1996))))).

A[COL] . . . is not binding on an appellate court and is freely reviewable for its correctness. Thus, the court reviews [COLs] *de novo,* under the right/wrong standard.

*Bumanglag v. Oahu Sugar Co., Ltd.,* 78 Hawai'i 275, 279, 892 P.2d 468, 472 (1995) (quoting *Tate v. GTE Hawaiian Tel. Co.,* 77 Hawai'i 100, 102–03, 881 P.2d 1246, 1248–49 (1994) (brackets in original)).

*Kahana Sunset Owners Ass'n v. County of Maui,* 86 Hawai'i 66, 68–69, 947 P.2d 378, 380–81 (1997) (some brackets added and some in original).

*Flor v. Holguin,* 94 Hawai'i 70, 76, 9 P.3d 382, 388 (2000) (some brackets added and some in original).

## III. *DISCUSSION*

■ As a threshold matter, Kaiser questions this court's jurisdiction over the present appeal, inasmuch as the LIRAB's order did not finally determine Tam's entitlement to benefits under the Workers' Compensation Law. The appeal of a decision or order of the LIRAB is governed by HRS § 91–14(a). *Bocalbos v. Kapiolani Medical Center for Women and Children,* 89 Hawai'i 436, 439, 974 P.2d 1026, 1029 (1999). HRS § 91–14(a) (1993) provides in relevant part that "[a]ny person aggrieved by a final decision and order in a contested case or by a preliminary ruling of the nature that deferral of review pending entry of a subsequent final decision would deprive appellant of adequate relief is entitled to judicial review thereof under this chapter[.]" The record reflects that Tam was still receiving benefits for medical care at the time of the DLIR's hearing. Inasmuch as Kaiser accepted liability and did not challenge the reasonableness of the medical care provided, HRS § 386–21(a) (1993 & Supp.1999) created a statutory entitlement to those benefits. *See State ex rel. Haylett v. Ohio Bureau of Workers' Compensation,* 87 Ohio St.3d 325, 720 N.E.2d 901, 906–07 (1999). Accordingly, Tam was entitled to the July 26, 1995 hearing, which, was a contested case hearing for purposes of HRS § 91–14(a). Moreover, although the LIRAB's decision does not end the proceedings in Tam's case, it is clear that "deferral of review pending entry of a subsequent final decision would deprive appellant of adequate relief." In fact, no relief is or will be available to Tam with respect to her challenge to the present

suspension of her workers' compensation benefits absent this court's review. Of course, Tam could comply with the Director's order and thereby have her benefits restored, but it is precisely the validity of that order and her right to ignore it that she asks this court to review in the present appeal. Given the parties' positions, and particularly Tam's claim that the order was unlawful, the option of complying with the Director's order is not "adequate relief." Accordingly, pursuant to HRS § 91–14(a), we have jurisdiction over the present appeal.

The only additional issue meriting our discussion is Tam's assertion that, on July 26, 1995, the Director erred in failing to apply the June 29, 1995 amendment to HRS § 386–79, *see supra* note 1, when the question of enforcement of the medical examination order, issued pursuant to the pre-amendment version of the statute, came on for hearing. Tam contends that the Director, and subsequently the LIRAB, erred when it failed to apply the amendment retroactively, inasmuch as the amendment was "remedial or procedural" in nature.

Regarding the retroactive effect of civil statutes, this court has stated:

HRS § 1–3 (1993) provides that "[n]o law has any retrospective operation, unless otherwise expressed or obviously intended." Also, this court has noted the "general rule in most jurisdictions that [s]tatutes or regulations which say nothing about retroactive application are not applied [to prior claims or events] if such a construction will impair existing rights, create new obligations or impose additional duties with respect to past transactions." *Clark v. Cassidy,* 64 Haw. 74, 77 n. 6, 636 P.2d 1344, 1346 n. 6 (1981).

*Wong v. Takeuchi,* 88 Hawai'i 46, 51, 961 P.2d 611, 616 (1998) (citing *State of Hawai'i Org. of Police Officers v. Society of Professional Journalists,* 83 Hawai'i 378, 389, 927 P.2d 386, 397 (1996)) (Some brackets added.). Nevertheless, under an equally established rule of construction, a statute providing remedies or procedures that do not affect existing rights, but merely alter the means of enforcing or giving ef-

fect to such rights, may apply to pending claims—even those arising before the effective date of the statute. *See Clark,* 64 Haw. at 77, 636 P.2d at 1347 (citations omitted). *See also Landgraf v. USI Film Products,* 511 U.S. 244, 273, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994) ("Although we have long embraced a presumption against statutory retroactivity, for just as long we have recognized that, in many situations, a court should 'apply the law in effect at the time it renders its decision.' ") (Citing *Bradley v. School Bd. of Richmond,* 416 U.S. 696, 711, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974)).

*Government Employees Ins. Co. v. Hyman,* 90 Hawai'i 1, 5, 975 P.2d 211, 215 (1999) (brackets in original) (holding that amendment granting health care providers standing to challenge insurer's denial of no-fault benefits for treatment of insured could be applied to claim arising from accident occurring prior to amendment's effective date, inasmuch as amended statute "does not impact the timing or scope of either the insured's right to payment, or the provider's right to payment, as defined under no-fault insurance contract and law, but merely relates to collateral matters of the enforcement and administration of these rights").

Although the general rule in workers' compensation cases is that the date of disability determines what year's version of the Workers' Compensation Law is applicable, *see Flor,* 94 Hawai'i at 81–82, 9 P.3d at 393–94, that rule applies to laws determining substantive rights, which accrue at the time when the claimant becomes disabled. *Id.* With respect to remedial or procedural laws, which "do not affect existing rights, but merely alter the means of enforcing or giving effect to such rights," *see Hyman,* 90 Hawai'i at 5, 975 P.2d at 215, the Director and the LIRAB are required to apply the law that is in effect at the time the agency renders its decision. In this connection, the substantive right underlying the Workers' Compensation Law is the injured employee's right promptly to receive compensation benefits. *See Flor,* 94 Hawai'i at 78, 9 P.3d at 390 ("[The Workers' Compensation Laws'] paramount purpose is to provide compensa-

tion to an employee for all work-related injuries[.]") (Citation omitted.). The employer's access to a medical examination order is merely "secondary to the [employee's] right to receive benefits in the first instance." *See Hyman*, 90 Hawai'i at 7, 975 P.2d at 217.

The amendment to HRS § 386–79 at issue in the present matter limited the Director's discretion in ordering medical examinations requested by employers by providing that, subsequent to the initial examination, further examinations may be ordered only when "good and valid reasons exist with regard to the medical progress of the employee's treatment." *See supra* note 1. This amendment does not affect any substantive rights created by the Workers' Compensation Law. It merely clarifies that an employer's right to subject its employee to a second medical examination by the employer's physician depends upon the presence of good and valid reasons for the examination that relate to changes in the employee's medical condition. In that sense, the amendment is remedial. The amendment is also procedural, inasmuch as medical examinations of an employee are merely an element of the mechanism by which the employee's right to workers' compensation is determined. In other words, such examinations "merely relate to collateral matters of the enforcement and administration of these rights." *Hyman*, 90 Hawai'i at 7, 975 P.2d at 217. Consequently, the 1995 amendment to HRS § 386–79 has retrospective application, and the Director should have considered the effect of the amendment on the continued validity of its order to compel Tam to submit to Kaiser's medical examination when Kaiser sought the enforcement of that order through the hearing before the Director.

The Director's September 19, 1995 decision did not expressly state whether it was retrospectively applying HRS § 386–79, as amended. However, the following language of the decision implies that the Director was applying the law in effect as of April 13, 1995: "As the employer is entitled to have the claimant examined by a physician for purposes of determining permanent impairment, at the time of said report [sic—order?], the mechanism of [a medical examination]

order was the proper method for affirming the employer's rights." The LIRAB's decision and order expressly referred to the version of HRS § 386–79 in effect on April 13, 1995 in affirming, on *de novo* review, the validity of the Director's medical examination order issued on that date. HRS § 386–79, as amended, being remedial and procedural in nature, the Director and the LIRAB erred in failing to consider whether the order was supported by "good and valid reasons" pertaining to "the medical progress of [Tam's] treatment" and to enter findings of fact accordingly.

■ Nevertheless, in his September 19, 1995 order, the Director expressly ruled that "the employer [*i.e.*, Kaiser] is entitled to have the claimant [*i.e.*, Tam] examined by a physician [*i.e.*, Dr. Nicholson] for purposes of determining permanent impairment[.]" The LIRAB's September 3, 1999 decision and order, which affirmed the Director, expressly stated that "the purpose of the examination with Dr. Nicholson was to . . . obtain a permanent impairment rating so as to address the issue of permanent disability[.]" In 1993, the Director had previously denied Kaiser's request to resolve the extent of Tam's permanent disability, finding the request to be premature. We have recognized the proposition, as a general matter, that "[p]ermanent disability is . . . not determined until an injured worker's medical condition has stabilized." *Bocalbos*, 89 Hawai'i at 442, 974 P.2d at 1032. It is therefore apparent that, as of 1993, the Director did not view Tam's current medical condition as being sufficiently stable to adjudicate her permanent partial disability and close the case. Accordingly, and of necessity, the Director's April 13, 1995 medical examination order related to the question whether Tam's medical condition had sufficiently changed between 1993 and 1995 to warrant a final decision regarding Tam's permanent partial disability. That being the case, we hold that the LIRAB's failure to apply HRS § 386–79, as amended, in its September 3, 1999 decision and order constituted harmless error, insofar as the record, on its face, reflects that the reason for the 1995 medical examination ordered by the Director

related directly "to the medical progress of [Tam's] treatment" in accordance with the mandate of the amended statute. *Cf. Tate,* 77 Hawai'i at 107–08, 881 P.2d at 1253–54 (LIRAB's failure to acknowledge statutory presumption of compensability of workers' compensation claim did not constitute reversible error when the record reflected that presumption had been rebutted).

IV. *CONCLUSION*

Based on the foregoing analysis, we affirm the LIRAB's decision and order.