98 P.3d 640

**Bobby P. DUQUE, Claimant–Appellant**

**v.**

**HILTON HAWAIIAN VILLAGE and Gallagher Bassett Services, Inc.,[1] Employer/Insurance Adjuster–Appellee**

**and**

**Special Compensation Fund, Appellee.**

**No. 24077.**

Supreme Court of Hawai'i.

Oct. 4, 2004.

---

**1.** Although the record designates Gallagher–Bassett Services, Inc. as the Insurance Carrier–Appellee, the employer in this case is self-insured and was represented by an adjuster. Therefore, Gallagher–Bassett Services, Inc. is correctly referred to as the Insurance Adjuster–Appellee.

Gary O. Galiher, L. Richard DeRobertis, Derek S. Nakamura, Jeffrey T. Ono, Honolulu, Anthony P. Takitani, Wailuku, and Diane T. Ono, on the briefs, Honolulu, for Claimant–Appellant Bobby P. Duque.

Jennifer M. Yusi, Honolulu, and Ann K. Kuwaye (Rush Moore Craven Sutton Morry & Beh), on the briefs, for Employer–Appellee Hilton Hawaiian Village and Insurance Adjuster–Appellee Gallagher Bassett Services, Inc.

Frances E.H. Lum and Herbert B.K. Lau, Deputy Attorneys General, on the briefs, for Appellee Special Compensation Fund.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

Opinion of the Court by ACOBA, J.

We hold that in this case, the Labor and Industrial Relations Appeals Board (LIRAB) erred in concluding that the permanent partial disability (PPD) rating and award of Claimant–Appellant Bobby P. Duque (Claimant) must be determined by use of the most current edition of the American Medical Association, *Guides to the Evaluation of Permanent Impairment* [hereinafter *Guides*]. While the most recent edition incorporates the latest scientific knowledge, physicians are not necessarily limited to reliance on the most current edition of the *Guides*. The

*Guides* itself states that it is not "the sole measure of disability," but "a component in disability assessment." *Guides* (5th ed.2001) [hereinafter *Fifth Edition*] at 12. Therefore, in conjunction with the *Guides,* physicians must be allowed to draw on their medical expertise and judgment to evaluate the numerous factors relating to an individual's impairment rating and to determine which *Guides* would be most appropriate to apply.

We further hold that the plain and unambiguous language of Hawai'i Revised Statutes (HRS) § 386–33(a)(1) (Supp.1999) requires that the actual dollar value of an award for a prior injury be offset against the actual dollar award for a subsequent injury where an employee suffers successive compensable injuries which result in a PPD.

## I.

On February 16, 1991, Claimant suffered an injury to his lower back while employed as a stock clerk at Times Super Markets (Times). The injury was sustained while Claimant was lifting a 45–50 pound crate of milk. One month later, on March 16, 1991, Claimant was involved in a motor vehicle accident in which he was rear-ended while stopped. The impact caused Claimant to hit the car in front of him. Following the accident, Claimant reported an increase in back pain.

J. Michael Burke, D.C.,[2] examined Claimant for the 1991 work injury and motor vehicle accident. On November 10, 1992, Burke issued a report with regard to the February 16, 1991 and March 16, 1991 injuries utilizing the Third Edition, Revised, of the *Guides* (3d ed.1990) [hereinafter *Third Edition* ]. Burke concluded that Claimant sustained 2% PPD of the whole person as a result of his lumbar spine condition and 7% PPD of the whole person for his cervical spine condition. Claimant settled his workers' compensation claim against Times and entered into a Stipulation and Settlement Order on May 12, 1992.

In the settlement, Claimant received $6,427.20 in PPD benefits.

On December 25, 1997, Claimant sustained a lower back injury while employed with Employer–Appellee Hilton Hawaiian Village (Employer) when he stepped into a grease trap (twist and fall injury). On November 5, 1998, Claimant was cleared to return to work without limitations. Following the injury of December 25, 1997, Inter–Island Adjusting Co., Inc. (Inter–Island),[3] requested a PPD rating of Claimant to be performed. James R. Langworthy, M.D., performed the PPD rating requested by Inter–Island on January 22, 1999. Dr. Langworthy utilized the Fourth Edition of the *Guides* (4th ed.1993) [hereinafter *Fourth Edition* ] to evaluate Claimant's PPD rating for the work injury sustained in 1997. This edition was the most current edition at the time of Claimant's PPD rating evaluation.

In his January 22, 1999 report, Dr. Langworthy concluded that Claimant fit into diagnosis related estimates (DRE) model lumbosacral category III, which indicated Claimant suffered 10% impairment of the whole person. Dr. Langworthy found that one half of the 10% total impairment (or 5%) was pre-existing as a result of an earlier work injury. Claimant was diagnosed as having a herniated disc at the L4–5 level with left L5 radiculopathy.

On July 27, 1999, Employer requested that Dr. Langworthy rate Claimant under the range of motion (ROM) model found in the *Third Edition.* Pursuant to Employer's request, Dr. Langworthy issued a supplemental report to his January 22, 1999 report, which assigned a rating of 18% impairment of the whole person to Claimant's December 25, 1997 lower back injury utilizing the *Third Edition.* Claimant asserts that Employer voluntarily agreed to convert the PPD rating of Claimant's December 25, 1997 injury suffered at the Hilton Hawaiian Village from the *Fourth Edition* to the *Third Edition.* However, Employer denies that it did and

2. The title "D.C." refers to a Doctor of Chiropractic.

3. Inter–Island was an independent insurance adjuster that represented the Employer. At some point Inter–Island was replaced by Insurance Adjuster–Appellee Gallagher–Bassett Services, Inc. *See supra* note 1.

maintains that the record is devoid of any statement or document indicating that the Director (Director) of the Department of Labor and Industrial Relations (DLIR) stated that the employer voluntarily agreed to convert the rating from that under the *Fourth Edition* to that under the *Third Edition.*

Claimant requested a hearing with Director to determine the appropriate PPD award in his case.[4] Because Claimant was previously awarded PPD benefits for his back injury at Times in 1991, the Director was required to offset the amount of the PPD award made for the 1991 injury from the PPD award for the 1997 injury pursuant to HRS § 386–33(a)(1).[5] The Director accepted the PPD rating obtained by application of the *Third Edition* for Claimant's 1997 injury. Relying on the *Third Edition,* the Director determined that Claimant had a permanent disability of 21% of the whole person as a result of the 1997 industrial injury at the Hilton Hawaiian Village.[6]

From this determination, the Director decided that Claimant should receive $32,825.52 in damages less the $6,427.20 award collected by Claimant for his prior 1991 injury for a balance of $26,398.32. The Director further found that Claimant was engaged in concur-

rent employment with the State Department of Education at the time of his 1997 injury and, as a result, found both Employer and the Special Compensation Fund liable for temporary total disability (TTD) benefits.[7]

On October 24, 2000, Employer appealed the Director's decision to the LIRAB. The sole issue on appeal was whether Claimant's PPD rating should be determined based on the *Guides* edition in effect at the time the 1991 injury was rated, or the edition in effect at the time the 1997 injury was rated.

On December 18, 2000, Employer filed a motion for summary judgment. On January 4, 2001, a hearing was held and on January 16, 2001, the LIRAB granted Employer's motion for summary judgment. In granting Employer's motion, the LIRAB concluded that "[t]he Fourth Edition of the AMA *Guides* should have been utilized to evaluate Claimant's PPD award for his December 25, 1997 injury since the Fourth Edition was the most current edition of the AMA *Guides* published at the time of the evaluation of Claimant's permanent impairment for his December 25, 1997 injury." In reaching its conclusion the LIRAB stated that:

---

4. Pursuant to HRS §§ 386–32 (Supp.2003) and 386–73 (1993), the Director of the DLIR is required to determine the extent of permanent disability in all cases involving worker's compensation matters.

5. *See infra* Part VI for text of HRS § 386–33(a)(1).

6. The Director added 3% PPD of the whole person for "residual" impairment to Dr. Langworthy's PPD assessment of 18%.

7. The Director's specific determinations are as follows:
 1. Pursuant to Section 386–33(a)(1), HRS, claimant's current monetary award of $32,825.52 (21% of the whole person) shall be offset by claimant's prior monetary award of $6,427.20 paid on the 2/16/91 accident. The employer is, therefore, liable for paying claimant a monetary award of $26,398.32 ($32,825.52 minus $6,427.20)
 2. Pursuant to Section 386–31(b), HRS, said employer shall pay to claimant weekly compensation of $288.28 for temporary total disability from work beginning 2/6/98 through 11/7/98 for 39.3857 weeks, for a total of $11,325.28.

3. Pursuant to Section 386–31(b) and 386–51.5, HRS, the Special Compensation Fund shall pay to claimant weekly compensation of $212.72 for temporary total disability from work beginning 2/9/98 through 8/17/98 for 27.1429 weeks, for a total of $5,773.84.

4. Pursuant to Sections 386–32(a) and 386–33(a)(1), HRS, said employer shall pay to claimant weekly compensation of $288 28 for permanent partial disability beginning 11/9/98 for 91.5718 weeks, for a total of $26,398.32. The $26,398.32 represents the offset amount between claimant's current permanent partial disability monetary award of $32,825.52 (21% of the whole person) and his prior monetary award of $6,427.20 (5% of the whole person).

5. Pursuant to Section 386–32(a), HRS, said employer shall pay to claimant one lump sum of $500.00 for disfigurement as follows: 1–1/2″ × 1/8″ dark, hyperpigmented keloidal midline surgical scar, low back.

6. Pursuant to Section 386–52, HRS, employer is authorized to credit temporary total disability benefits paid beginning 11/8/98 through 11/21/98 against the award for permanent partial disability benefits.

Section 386-33(a)(1), HRS does not contemplate, much less require, that subsequent injuries be rated under the same edition of the AMA *Guides* as the prior injury. Thus, absolutely no conversion of impairment ratings is necessary between prior and subsequent injuries.

(Citations omitted.)

On January 17, 2001 Claimant filed a Request for Reconsideration of Order Granting Employer's Motion for Summary Judgment.[8] The LIRAB denied Claimant's request by Order filed on January 26, 2001.

## II.

On February 9, 2001, Claimant appealed the LIRAB's January 16, 2001 decision and order granting Employer's motion for summary judgment to this court. He contends (1) that the LIRAB erred when it concluded as a matter of law that the Director was required to use Dr. Langworthy's January 22, 1999 rating performed pursuant to the *Fourth Edition* and (2) that the LIRAB erred when it failed to recognize that HRS § 386.33(a)(1), as amended, contemplates a comparison of the subsequent injury and the prior compensable injury in successive injury

cases for purposes of determining the appropriate offset amount, and (3) that the LIRAB erred when it failed to include in its findings of fact that Dr. Langworthy did not consult Dr. Burke's November 10, 1992 range of motion rating report for the February 16, 1991 injury when he performed his rating evaluation on January 22, 1999. Employer argues (1) that the LIRAB correctly ruled that Claimant's subsequent 1997 injury should be rated using the then current *Fourth Edition*, and (2) the amount of compensation in dollars awarded for Claimant's prior 1991 injury should be offset against the amount of dollars awarded for Claimant's subsequent 1997 injury.

## III.

■ Review of the LIRAB's order is governed by HRS § 91-14(g) (1993).[9] Under HRS § 91-14(g), conclusions of law are reviewed *de novo*, under the right/wrong standard. "A conclusion of law ... is not binding on an appellate court and is freely reviewable for its correctness. Thus, the court reviews conclusions of law *de novo*, under the right/wrong standard." *Tam v. Kaiser Permanente*, 94 Hawai'i 487, 494, 17 P.3d 219, 226 (2001) (citations omitted). Findings of fact

8. In his request for reconsideration, Claimant argued as follows that the LIRAB misinterpreted his contention on appeal:

At page 7 of the order, [LIRAB] states, "Claimant contends, however, that as his prior low back injury of February 16, 1991 was evaluated according to the Third Edition Revised of the AMA *Guides*, his award for PPD for his December 25, 1997 injury should be based upon an evaluation performed in accordance with the Third Edition Revised of the AMA *Guides*, not the Fourth Edition AMA Guides." However, Claimant's actual contention was that where the Director had available impairment rating reports performed by James Lanworthy, M.D. utilizing the DRE criteria and the ROM model, he should not be prohibited from utilizing the impairment rating performed in accordance with the ROM model when comparing the December 25, 1997 injury with the February 16, 1991 injury which was rated utilizing the ROM model.

(Citations omitted.) Claimant further urged the Board to reconsider the intent of HRS § 386-33(a)(1):

Specifically, the limitation imposed by the 1995 amendment in the section was to allow claimants permanent partial disability awards based on a measure of the actual aggravation

of the underlying injury. *A comparison of the underlying injury with the worsened state following the subsequent injury is implied from the statute.* A comparison can only be accomplished utilizing a single method of evaluation-apples must be compared with apples and oranges compared with oranges.

(Citations omitted.) (Emphasis added.)

9. HRS § 91-14(g) provides in relevant part:

Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:

　(1) In violation of constitutional or statutory provisions; or ·

　(2) In excess of the statutory authority or jurisdiction of the agency; or

　(3) Made upon lawful procedure; or

　(4) Affected by other error of law; or

　(5) Clearly erroneous in view of the reliable, probative, and

　(6) Arbitrary, or capricious, or characterized by abuse of discretion.

are reviewed under the clearly erroneous standard:

> "Appeals taken from findings of fact set forth in the decision of the Labor and Industrial Relations Appeal Board are reviewed under the clearly erroneous standard. Thus, the court considers whether such a finding is [c]learly erroneous in view of the reliable, probative, substantial evidence on the whole record[.] The clearly erroneous standard requires the court to sustain the [LIRAB's] finding unless the court is left with a firm and definite conviction that a mistake has been made ..."

*Korsak v. Hawaii Permanente Medical Group, Inc.,* 94 Hawai'i 297, 302–03, 12 P.3d 1238, 1243–44 (2000).

## IV.

██ We conclude, as to Claimant's first contention, that the LIRAB erred when it ruled as a matter of law that Claimant's PPD rating must be determined by use of the most current edition at that time, the *Fourth Edition.* In our view, exclusive use of the most current edition of the applicable medical guide available at the time of evaluation is not mandated by either HRS § 386–33 or Hawai'i Administrative Rule (HAR) §§ 12–10–21 or 12–10–28 for determining an injured employee's PPD rating.

HRS § 386–33(a) is silent on the issue of whether the most recent edition of the *Guides* should be used to calculate an employee's PPD rating where the employee's prior injury was evaluated under a different edition of the *Guides.* However, HRS § 386–33(a) does contemplate that comparisons must be made between prior and subsequent injuries that would result in increased disability ratings. Specifically, HRS § 386–33(a) states in relevant part as follows:

> (a) *Where prior to any injury an employee suffers from a previous permanent partial disability already existing prior to the injury for which compensation is claimed,* and *the disability resulting from the injury combines with the previous disability,* whether the previous permanent partial disability was incurred during past or present periods of employment, *to result in a greater permanent partial dis-*

*ability* or in permanent total disability or in death, then weekly benefits shall be paid[.]

(Emphases added.)

HAR § 12–10–28(a) further requires that "[t]he extent of medical impairment preexisting the work injury, *shall be assessed by a physician* pursuant to Section 12–10–21(a)." (Emphasis added.) To measure impairment, Section 12–10–21(a) permits the use of "[i]mpairment guides issued by the American Medical Association, Academy of Orthopedic Surgeons, and any other such guides which the director deems appropriate and proper." HAR § 12–10–21(a). The use of the *Guides* and other guides was affirmed by this court in *Cabatbat v. County of Hawaii, Dep't of Water Supply,* 103 Hawai'i 1, 78 P.3d 756 (2003). We determined that "HAR § 12–10–21, which states that the AMA *Guides may* be used as a reference, permits reliance on the AMA *Guides,* but does not mandate their use to the exclusion of other appropriate guides." *Id.* at 6, 78 P.3d at 761 (emphasis in original).

In this case, the *Guides* were used exclusively to determine Appellant's PPD rating. *See Fifth Edition* at iii (stating that the *Guides* have "become the most commonly used source for assessing and rating an individual's permanent impairment in the United States, and, increasingly abroad"). In effect, Claimant argues that the *Third Edition* should be utilized to evaluate the PPD rating for his subsequent 1997 work injury, while Employer urges that the then current edition of the *Guides* should be used.

The *Fourth Edition* recommended use of the most current *Guides* edition. *See Fourth Edition* at 5. ("The American Medical Association strongly discourages the use of any but the most recent edition of the *Guides,* because the information in [earlier editions] would not be based on the most recent up-to-date material.") The rationale for this position is that "the pace of progress and advance in medicine continues to be rapid, and that a new look at the impairment criteria for all organ systems is advisable[.]" *Id.,* Foreword at v. The *Fifth Edition,* which is the most current edition, continues the *Fourth*

*Edition* approach of incorporating the latest scientific knowledge by *"updat[ing]* the diagnostic criteria and evaluation process used in impairment assessment, incorporating available scientific evidence and prevailing medical opinion." *Fifth Edition* at 1 (emphasis added). Thus, the *Fifth Edition* declares that "[t]he most recent edition of the *Guides* is ... the latest blend of science and medical consensus." *Id.* at 12, 78 P.3d 756.

But, the AMA also recognizes that the *Guides* are only "a tool for evaluation of permanent impairment" used by the physician, *id.* at 13, 78 P.3d 756, and "may be used as a *component in disability assessment* [,]" *id.* at 12, 78 P.3d 756 (emphasis added). It is cautioned that "the *Guides* is not to be used for direct financial awards nor as the sole measure of disability." *Id.* Rather, "[t]he impairment evaluation ... is *only one aspect* of disability determination. A disability determination also includes information about the individual's skills, education, job history, adaptability, age, and environment requirements and modifications." *Id.* at 8, 78 P.3d 756. Accordingly, the AMA recognizes that "[a]ssessing these factors can provide a *more realistic picture of the effects of the impairment* on the ability to perform complex work and social activities." *Id.* (emphasis added). Hence, in applying the *Guides* the impairment rating is one factor in a sum of considerations employed in arriving at a disability decision. As emphasized by the *Fifth Edition,* "[i]mpairment percentages derived from the *Guides* criteria should not be used as direct estimates of disability." *Id.* at 13, 78 P.3d 756.

### V.

Pertinent to this case, the *Fifth Edition* posits that "[a]lthough a previous evaluator may have considered a medical impairment to be permanent, unanticipated changes may occur: the condition may have become worse as a result of aggravation or clinical progression, or it may have improved." *Id.* at 21, 78 P.3d 756. In these circumstances, the AMA states that the person evaluated should be assessed using the current edition of the *Guides:*

The physician should assess the current state of the impairment according to the criteria in the *Guides.* If an individual received an impairment rating from an earlier edition and needs to be reevaluated because of a change in the medical condition, the individual is evaluated according to the latest information pertaining to the condition in the current edition of the *Guides.*

*Id.*

But "[i]f apportionment is needed, the analysis must consider the nature of the impairment and its relationship to each alleged causative factor, providing an explanation of the medical basis for all conclusions and opinions." *Id.* In this case, an apportionment between the earlier 1991 injury and the subsequent 1997 injury is required. Under such circumstances, the *Fifth Edition* vests in the physician the ultimate determination of the appropriate *Guides* to use.

For example, in apportioning a spine impairment, first the current spine impairment rating is calculated, and then an impairment rating from any preexisting spine problem is calculated. The value for the preexisting impairment rating can be subtracted from the present impairment rating to account for the effects of the intervening injury or disease. Using this approach to apportionment requires accurate information and data to determine both impairment ratings. If different editions of the *Guides* are used, the physician needs to assess their similarity. If the basis of the ratings is similar, a subtraction [between the value for the preexisting impairment rating from the present impairment rating to account for the effects of the intervening injury or disease] is appropriate. If they differ markedly, the *physician needs to evaluate the circumstances and determine if conversion to the earlier or the latest edition of the Guides for both ratings is possible. The determination* should follow any state guidelines and *should consider whichever edition best describes the individual's impairment.*

*Id.* (emphases added). Thus, the *Fifth Edition* instructs physicians to consider and

evaluate which edition is most appropriate to use in making an impairment rating in any particular case.

 It follows then that a physician may use the most current edition of the *Guides* when evaluating an employee's PPD rating. However, a physician is not limited to reliance on the most current edition. The *Guides* themselves instruct that in light of his or her education and training, a physician should draw on medical expertise and judgment to select the most appropriate guide to utilize in assessing an individual's impairment.

In the case at bar, Dr. Langworthy used both the *Third Edition* and the *Fourth Edition* to evaluate Claimant's 1997 subsequent work injury and arrived at two separate and different ratings. As previously mentioned, in the January 22, 1999 report, Dr. Langworthy reported a 10% PPD rating of the whole person (5% pre-existing from the prior work injury) using the *Fourth Edition's* DRE criteria. In a supplemental report six months later on July 27, 1999, Dr. Langworthy reported that Claimant's condition would be rated at 18% PPD of the whole person if the *Third Edition* were used. The record is devoid, however, of any indication by Dr. Langworthy of which edition best describes Claimant's impairment.

In the hearing before the Director to determine the appropriate PPD award for Claimant, Director relied on the *Third Edition* rating because "it seem[ed] reasonable to use the Third Edition, Revised as the claimant's prior award of 5% PPD of the whole person was premised on the Third Edition, Revised." In its hearing the LIRAB concluded that the Director erred because "[t]he Fourth Edition of the AMA *Guides* should have been utilized," it being the most current edition published at the time of the evaluation.

Because, under the *Guides,* an impairment rating is one that must be determined by a person qualified to render an opinion in that regard, the record was insufficient for the

Director or the LIRAB to conclude whether one or the other rating was the most appropriate to describe Claimant's impairment. The AMA explains that "[p]hysicians have the education and training to evaluate a person's health status and determine the presence or absence of an impairment." *Fifth Edition* at 8. *See also* HAR § 12–10–28(a) (stating that "medical impairment ... shall be assessed by a physician"). The LIRAB's decision mandating the use of the *Fourth Edition* in this case would preclude a physician from drawing upon his or her medical judgment and expertise in determining the most appropriate edition to apply.[10] Accordingly, this case must be remanded to permit such judgment and expertise to be exercised by appropriate qualified persons.

## VI.

 The issue raised by Claimant's second point is whether HRS § 386–33(a)(1) mandates a comparison of impairment ratings as between the Claimant's prior injury and his subsequent injury to determine the appropriate offset amount or whether HRS 386–33(a)(1) requires that the actual dollar award of the prior injury be offset against the actual dollar award of the subsequent injury. We conclude that HRS § 386–33(a)(1) requires that the actual dollar awards for the prior and subsequent injuries must be offset.

HRS § 386–33 governs cases involving employees who suffer successive compensable injuries resulting in PPD. HRS § 386–33(a)(1) provides as follows:

(a) *Where prior to any injury an employee suffers from a previous permanent partial disability already existing prior to the injury for which compensation is claimed,* and the *disability resulting from the injury combines with the previous disability,* whether the previous permanent partial disability was incurred during past or present periods of employment, *to result in a greater permanent partial disability* or in permanent total disability or

10. Claimant's contention (3) that the LIRAB erred when it failed to include in its findings of fact that Dr. Langworthy did not review Dr. Burke's November 10, 1992 rating report based on the *Third Edition* for Claimant's 1991 injury when he performed his rating on January 22, 1999 using the *Fourth Edition,* is subsumed in this discussion, in light of our disposition.

in death, then weekly benefits shall be paid as follows:

(1) In cases where the disability resulting from the injury combines with previous disability to result in greater permanent partial disability the employer shall pay the employee compensation for the employee's actual permanent partial disability but for no more than one hundred four weeks; the balance if any of compensation payable to the employee for the employee's actual permanent partial disability shall thereafter be paid out of the special compensation fund; provided that in successive injury cases where the claimant's entire permanent partial disability is *due to more than one compensable injury, the amount of the award for the subsequent injury shall be offset by the amount awarded for the prior compensable injury* [.]

(Emphases added.)

▮ Interpretation of a statute is freely reviewable *de novo*. *Korsak v. Hawai'i Permanente Medical Group*, 94 Hawai'i 297, 303, 12 P.3d 1238, 1244 (2000). In doing so, the statutory language must be read in the context of the entire statute and construed in a manner consistent with its purpose. *State v. Mezurashi*, 77 Hawai'i 94, 97, 881 P.2d 1240, 1243 (1994).

First, by its own terms, HRS § 386–33(a)(1) requires that a comparison be made between initial and subsequent injuries to determine whether either greater permanent partial disability, total disability, or death resulted from the combination of the initial and subsequent injuries. Second, the plain language of the statute requires that the "amount of the award" of the subsequent injury be "offset by the amount awarded" for the prior injury. HRS § 386–33(a)(1).

We construe the phrase "amount of award" to mean monetary value. In *Crowley v. City & County of Honolulu Wastewater Mgmt.*, the Intermediate Court of Appeals (the ICA) held in construing HRS § 386–33(a)(1), that the claimant's PPD award should be calculated as the *monetary value* of 14 percent permanent partial disability (PPD) less the *monetary value* of the two percent PPD

award. 100 Hawai'i 16, 16–17, 58 P.3d 74, 74–75 (App.2002) (emphases added). In *Crowley,* Claimant suffered lower back injuries in two successive work incidents. *Id.* The ICA concluded that the mandated offset was based upon the dollar amount of the awards, not the impairment ratings of the injuries. *Id.* at 16–17, 20, 58 P.3d at 74–75, 78. It reasoned that the language of the statute

> contraindicates the semantic primacy of the word "award".... The statutory context indicates ... the word "amount" is therein paramount. This being so, we believe that if the legislature intended "amount" to mean "percentage" [of PPD rating], it certainly would have said so. In our view, "the statutory language is plain and unambiguous, [and] our only duty is to give effect to [the] statute's plain and obvious meaning."

*Id.* at 18, 58 P.3d at 76 (quoting *Bumanglag v. Oahu Sugar Co., Ltd.,* 78 Hawai'i 275, 280, 892 P.2d 468, 473 (1995)).

Moreover, "amount" means "the total number or quantity" and "award" is defined as "something that is conferred or bestowed." *Webster's Third New Int'l Dictionary* 72, 152 (1961). In HRS § 386–33, the terms "amount" and "award" are used in conjunction with provisions relating to monetary sums. For instance, the statute instructs an employer to "*pay* the employee compensation" and the "the *balance* if any of compensation *payable* to the employee." HRS § 386–33(a)(1) (emphases added). In this context, amount is referable to the quantity of compensation paid, and the award is the compensation conferred or bestowed on the employee. Hence, we agree with the ICA and conclude that the phrase "amount of award" in HRS § 386–33(a)(1) refers to the monetary value of the PPD awards. In sum, HRS § 386–33(a)(1) requires a comparison of the monetary value of the PPD awards derived from the impairment ratings of the subsequent and prior compensable injuries to determine the appropriate offset amount.

## VII.

For the foregoing reasons, we vacate the LIRAB's January 16, 2001 decision and or-

der and remand to the LIRAB for further proceedings in accordance with this opinion.