58 P.3d 74

**Brian T. CROWLEY, Claimant–Appellee,**

v.

**CITY AND COUNTY OF HONOLULU,
WASTEWATER MANAGEMENT,
Defendant–Appellant.**

No. 23395.

Intermediate Court of Appeals of Hawai'i.

Sept. 9, 2002.

Certiorari Granted Oct. 21, 2002.

Paul K.W. Au, Deputy Corporation Counsel, City and County of Honolulu, On the briefs, for Employer Appellant, Self Insured.

BURNS, C.J., LIM and FOLEY, JJ.

Opinion of the Court by LIM, J.

Employer–Appellant, self-insured, City and County of Honolulu, Wastewater Management, nka Department of Environmental Services (Employer), appeals the February 14, 2000 decision and order of the Labor and Industrial Relations Appeals Board (LIRAB), and the LIRAB's March 22, 2000 order denying Employer's motion for partial reconsideration of the decision and order. We affirm.

The LIRAB rendered its February 14, 2000 decision and order upon Claimant–Appellee Brian T. Crowley's (Crowley) [1] appeals of the decisions of the Director of Labor and Industrial Relations (Director) on Crowley's two workers' compensation claims for, respectively, lower back injuries suffered in

---

1. Claimant–Appellee Brian T. Crowley did not file an answering brief in this appeal.

two successive work incidents. The first claim (Case No. AB 97–631) arose out of a January 17, 1995 incident at work. Crowley suffered a compensable injury to his lower back as he yanked on a heavy hose in order to untangle it. On September 18, 1997, the Director decided that Crowley did not suffer any permanent partial disability (PPD) as a result of the January 1995 work injury. The second claim (Case No. AB 97–632) arose out of an April 19, 1996 compensable injury to Crowley's lower back, sustained when he attempted to empty a mop bucket into a sink. In a September 18, 1997 decision, the Director determined that Crowley had sustained 10% PPD of the whole person as a result of the April 1996 work injury.

In a February 14, 2000 decision and order issuing out of the consolidated hearing of Crowley's appeals in Case Nos. AB 97–631 and AB 97–632, the LIRAB modified the Director's decisions by concluding that Crowley sustained 14% PPD of the whole person as a result of the April 1996 injury and 2% PPD of the whole person as a result of the January 1995 injury.

The statute at issue in this appeal, Hawaii Revised Statutes (HRS) § 386–33(a)(1) (Supp.2001), provides:

> Where prior to any injury an employee suffers from a previous permanent partial disability already existing prior to the injury for which compensation is claimed, and the disability resulting from the injury combines with the previous disability, whether the previous permanent partial disability was incurred during past or present periods of employment, to result in a greater permanent partial disability or in permanent total disability or in death, then weekly benefits shall be paid as follows:
>
> In cases where the disability resulting from the injury combines with the previous disability to result in greater permanent partial disability the employer shall pay the employee compensation for the employee's actual permanent partial disability but for not more than one hundred four weeks; the balance if any of compensation payable to the employee for the employee's actual permanent partial disability shall thereafter be paid

out of the special compensation fund; *provided that in successive injury cases where the claimant's entire permanent partial disability is due to more than one compensable injury, the amount of the award for the subsequent injury shall be offset by the amount awarded for the prior compensable injury[.]*

(Enumeration omitted, emphasis supplied.)

While Employer does not controvert the findings in the LIRAB decision and order, it does contest the LIRAB's calculation of Crowley's PPD benefits, insofar as the LIRAB concluded that pursuant to HRS § 386–33(a)(1), compensation for Crowley's PPD award should be calculated as the *monetary value* of 14% PPD of the whole person ($21,665.28) less the *monetary value* of the 2% PPD award ($3,063.84), for a total of $18,601.44. Employer asserts that

> the [LIRAB's] interpretation of HRS [§ ] 386–33(a)(1) is inconsistent with the long-standing construction given the statute by the Department of Labor and Industrial Relations (hereinafter referred to [as] "DLIR"), the government agency which is solely responsible for implementing the same. The proper interpretation, as implemented by DLIR, deducts **the percentage awarded for permanent partial disability** for a prior compensable injury from the current percentage of PPD.

Opening Brief at 9· (bold emphasis in the original). Hence, Employer requests that we reverse the LIRAB's February 14, 2000 decision and order and "issue an amended decision awarding [Crowley 12% PPD] of the whole person (14% for the [April 1996] claim—2% for the [January 1995] claim)." Opening Brief at 12.

"In construing HRS § 386–33, our foremost responsibility is to ascertain and give effect to the intention of the legislature, obtained primarily from the language itself. Further, we must read the statutory language in the context of the entire statute and construe it in a manner consistent with its purpose. Where the statutory language is plain and unambiguous, our only duty is to give effect to statute's plain and obvious meaning." *Bumanglag v. Oahu Sugar Co.,*

*Ltd.*, 78 Hawai'i 275, 279–80, 892 P.2d 468, 472–73 (1995) (brackets, citations and internal quotation marks omitted).

With respect to legislative intent, Employer acknowledges that "[i]n interpreting and applying statutes, the primary duty of the courts is to give effect to the intention of the legislature as gleaned primarily from the language contained in the statute itself." Opening Brief at 9 (citations omitted). Employer goes on to argue, however, that

> the statute at issue in this appeal, in particular the term "amount of the award" as it appears in HRS [§ ] 386–33(a)(1), does not easily lend itself to such effect. The term could either refer to the amount of "compensation" awarded to a workers' compensation claimant for PPD as the [LIRAB] has concluded or the amount of "permanent partial disability" resulting from the work injury as asserted by [Employer].

Opening Brief at 9–10 (footnote omitted). We might see Employer's point if the phrase, "amount of the award[,]" is taken out of all context. But "we must read the statutory language in the context of the entire statute[.]" *Bumanglag*, 78 Hawai'i at 280, 892 P.2d at 473 (citation omitted). Employer's argument does not weather well the statutory juxtaposition—"the *amount of the award* for the subsequent injury shall be offset by the *amount awarded* for the prior compensable injury[,]" HRS § 386–33(a)(1) (emphases supplied)—which contraindicates the semantic primacy of the word "award" that is the linchpin of Employer's argument. The statutory context indicates, instead, that the word "amount" is therein paramount. This being so, we believe that if the legislature intended "amount" to mean "percentage," it certainly would have said so. In our view, "the statutory language is plain and unambiguous, [and] our only duty is to give effect to [the] statute's plain and obvious meaning." *Bumanglag*, 78 Hawai'i at 280, 892 P.2d at 473 (citation omitted).

■ Employer also argues that because the DLIR has long and consistently interpreted and applied HRS § 386–33(a)(1) in the manner urged upon us in this appeal, the law counsels that we defer to the DLIR's working construction. Employer cites several Hawai'i Supreme court cases in support of this contention. None of these cases were, however, workers' compensation cases. These cases involved, moreover, a legislative mandate "of broad and indefinite meaning," *Waikiki Resort Hotel v. City and County*, 63 Haw. 222, 243, 624 P.2d 1353, 1368 (1981) (citations omitted); *Hyatt Corp. v. Honolulu Liquor Commission*, 69 Haw. 238, 243, 738 P.2d 1205, 1208 (1987) (citations and internal block quote format omitted), or "indefinite and doubtful[,]" *Waikiki Resort Hotel*, 63 Haw. at 243, 624 P.2d at 1368 (citation and internal block quote format omitted), where there was "doubt as to the meaning of the statute." *Keller v. Thompson*, 56 Haw. 183, 190, 532 P.2d 664, 670 (1975) (citation omitted). *See also Chun v. Employees' Retirement System of the State of Hawaii*, 61 Haw. 596, 602, 607 P.2d 415, 419 (1980).

■ Here, as we have said, there is no ambiguity in the statutory language. At any rate, we question, in the first instance, whether any deference is due in this case, for in appeals out of the LIRAB, "this court reviews conclusions of law *de novo*, under the right/wrong standard." *Bumanglag*, 78 Hawai'i at 279, 892 P.2d at 472 (brackets, citation and internal block quote format omitted). Furthermore, "the interpretation of a statute is a question of law reviewable de novo." *Korsak v. Hawaii Permanente Medical Group*, 94 Hawai'i 297, 303, 12 P.3d 1238, 1244 (2000) (brackets, ellipsis, citations and internal quotation marks and block quote format omitted) (construing HRS § 386–85(1)). *Cf. Nakamura v. State*, 98 Hawai'i 263, 268, 47 P.3d 730, 735 (2002) (in an appeal of the LIRAB's determination that a claimant did not suffer a work-related stress injury, confirming that "[i]t is well established that courts decline to consider the weight of the evidence to ascertain whether it weighs in favor of the administrative findings, or to review the agency's findings of fact by passing upon the credibility of witnesses or conflicts in testimony, especially the findings of an expert agency dealing with a specialized field" (citation and internal block quote format omitted)).

We defer, instead, to the intention of the legislature and construe the statute "in a manner consistent with its purpose." *Bumanglag*, 78 Hawai'i at 280, 892 P.2d at 473 (citation omitted).

Before 1995, HRS § 386-33(a)(1) read exactly as quoted above, except that it did not include the offset provision at issue in this appeal. HRS § 386-33(a)(1) (1993). Under the pre–1995 version of the statute, as Employer points out,

> if Claimant X had a work injury to his back which resulted in an award of 5% [PPD] of the whole person, then suffered another work-related back injury which results in a PPD award consisting of 10% of the whole person, Claimant X would receive compensation based on 5% PPD for the first work injury and compensation based on 10% for the second injury. If Claimant X subsequently suffers a third work injury to his back which results in 11% PPD of the whole person, he would receive compensation based on 11% PPD for the third injury. A fourth work-related injury to his back resulting in 15% PPD of the whole person would consequently entitle Claimant X to compensation based on 15% PPD. Thus, under the prior law, Claimant X would have received total compensation equal to 41% [PPD] (5% + 10% + 11% + 15%) despite the fact that following the last injury, the cumulative effects of the four work injuries resulted in 15% [PPD] of the whole person.

Opening Brief at 7–8. In 1995, the legislature passed sweeping amendments to HRS chapter 386, 1995 Haw. Sess. L. Act 234, at 605–621, in an effort to improve the cost-effectiveness and efficiency of Hawai'i's workers' compensation law.[2] In particular, HRS § 386–33(a)(1) was amended to avoid the kind of double recovery described in Employer's example. 1995 Haw. Sess. L. Act 234, § 10 at 610–611. These amendments did not, however, repeal the underlying purpose of our workers' compensation law, nor did they alter our basic approach to that law:

> A large number of cases have recognized that our workers' compensation statute has a beneficent purpose and should be afforded liberal construction in favor of the employee, to fulfill the humanitarian purposes for which it was enacted. Indeed, since the supreme court's first look at Hawaii's then new workers' compensation statute in 1916, analyses in these kinds of case have been grounded in the humanitarian purposes premise.

*Korsak*, 94 Hawai'i at 306–7, 12 P.3d at 1247–48 (brackets, citations and internal quotation marks and block quote format omitted).

Both the legislature's intent in passing the 1995 amendments, and its general purpose in creating our workers' compensation law, indicate that the LIRAB was right in compensating Crowley in the manner that it did. In the typical successive injuries case, the employee suffers his or her respective injuries in different years. As Employer's counsel informed us at oral argument,[3] each year, a different maximum compensation rate, in dollar terms, is set for all compensable injuries suffered during that year, and this maximum compensation rate is used in calculating a claimant's PPD award.[4] The percentage method of offset computation touted by Employer does not take into consideration the fact that PPD compensation for a claimant's earlier work injury may be based on a lower

---

2. "The purpose of the bill is to initiate comprehensive workers' compensation reform by streamlining and reducing the costs involved in the process, without overlooking the underlying premise of the system, which is to enable the injured worker to receive timely and the most effective medical treatment and rehabilitation." Hse. Stand Comm. Rep. No. 575, in 1995 House Journal, at 1241–42.

3. "This court may not consider matters outside the record for purposes of appellate review unless ... counsel concedes certain facts in oral argument[.]" *City & County v. Toyama*, 61 Haw.

156, 158 n. 1, 598 P.2d 168, 171 n. 1 (1979) (citing *Bagalay v. Lahaina Restoration Foundation*, 60 Haw. 125, 134 n. 4, 588 P.2d 416, 423 n. 4 (1978)).

4. A claimant's permanent partial disability (PPD) award is determined by multiplying the maximum compensation rate (MCR) set for the year in which the claimant suffers injury, by 312 weeks; the product is then multiplied by the claimant's PPD rating, which is expressed in percentage-of-the-whole-person terms. (MCR × 312 × PPD%).

maximum compensation rate than that applicable to the later work injury. Employer's percentage method makes the latter, in ·effect, applicable across the board. This results in the PPD compensation attributable to the earlier injury, the subtrahend, being artificially higher or inflated, while the PPD compensation attributable to the later injury, the minuend, remains correct, but constant. The remainder, hence, is lower in dollar terms than it should be.

The percentage method of offset computation would do more than prevent double recovery by claimants in successive work injury situations, in many cases it would have the net effect of penalizing a claimant by offsetting an amount higher than would otherwise be paid in PPD compensation for the earlier injury,[5] thus awarding inadequate ultimate compensation for successive work injuries. By the same token, in the off chance that the maximum compensation rate for the later injury is lower than that applicable to the earlier injury, the claimant would enjoy a windfall. In neither event would both the legislature's intent in passing the 1995 amendments, and its general purpose in creating our workers' compensation law, be fulfilled. Only under the LIRAB's method of calculation are the two happily harmonized, in that the claimant is awarded the compensation to which he or she is entitled—no more, no less.

Accordingly, we affirm the LIRAB's February 14, 2000 decision and order, and the LIRAB's March 22, 2000 order denying Employer's motion for partial reconsideration of the decision and order.

---

**5.** In the event the claimant has already been paid the full amount of PPD compensation for his or her earlier injury, the percentage method would, in effect, offset a higher dollar amount than was actually paid the claimant.