126 P.3d 415

**Edward F. ERMOCIDA, Claimant–Appellant,**

v.

**DESTINATION RESORTS HAWAII, INC. and Brandvold & Associates, Inc., Employer/Insurance Adjuster–Appellees.**

**No. 26269.**

Intermediate Court of Appeals of Hawai'i.

Dec. 21, 2005.

As Amended Dec. 30, 2005.

Certiorari Denied Jan. 19, 2006.

Deborah A. McNulty and Timothy P. McNulty (Timothy P. McNulty, a Law Corporation), Kihei, on the briefs, for Claimant–Appellant.

Gary N. Kunihiro and Michael S. Joaquin (Leong Kunihiro Leong & Lezy), Honolulu, on the briefs, for Employer/Insurance Adjuster–Appellees.

BURNS, C.J., FOLEY and FUJISE, JJ.

1. Hawaii Revised Statutes (HRS) § 386–33(a)(1) (Supp.2004) provides:

    § **386–33 Subsequent injuries that would increase disability.** (a) Where prior to any injury an employee suffers from a previous permanent partial disability already existing prior to the injury for which compensation is claimed, and the disability resulting from the injury combines with the previous disability, whether the previous permanent partial disability was incurred during past or present periods of employment, to result in a greater permanent partial disability or in permanent total disability or in death, then weekly benefits shall be paid as follows:
    (1) In cases where the disability resulting from the injury combines with the previous disability to result in greater permanent partial disability the employer shall pay the employee compensation for the employee's actual permanent partial disability but for not more than one hundred four weeks; the balance if any of compensation payable to the employee for the employee's actual permanent partial disability shall thereafter be paid out of the special compensation fund; provided that in successive injury cases where the claimant's entire permanent partial disability is due to more than one compensable injury, the amount of the award for the subsequent injury shall be offset by the

Opinion of the Court by FOLEY, J.

Claimant–Appellant Edward F. Ermocida (Ermocida) appeals the Decision and Order filed on November 25, 2003 by the Labor and Industrial Relations Appeals Board (LIRAB). The LIRAB decided that the offset provision set forth in Hawaii Revised Statutes (HRS) § 386–33(a)(1) (Supp.2004)[1] applied to Ermocida's prior out-of-state permanent partial disability award.

On appeal,[2] Ermocida claims the following: (1) the LIRAB erred as a matter of law when it determined that HRS § 386–33(a)(1) applied to out-of-state disability awards, and (2) the LIRAB should have granted summary judgment in favor of Ermocida because HRS § 386–33(a)(1) did not apply to out-of-state disability awards. We disagree and affirm.

**I.**

On December 29, 1982, Ermocida injured his lower back in California while employed as a truck driver for Conoco, Inc. (Conoco). The record before this court reveals little regarding the procedure Ermocida followed in California to obtain a workers' compensa-

amount awarded for the prior compensable injury[.]

2. The opening brief of Claimant–Appellant Edward F. Ermocida (Ermocida) fails to comply with Hawai'i Rules of Appellate Procedure (HRAP) Rule 28(b)(4) in that each point of error does not state "(ii) where in the record the alleged error occurred; and (iii) where in the record the alleged error was objected to or the manner in which the alleged error was brought to the attention of the court or agency." Ermocida's counsel is warned that future non-compliance with HRAP 28(b)(4) may result in sanctions against him.

The answering brief of Employer/Insurance Adjuster–Appellees Destination Resorts Hawaii, Inc. and Brandvold & Associates, Inc. (collectively, Employer) fails to comply with HRAP Rule 28(b)(3) in failing to include in some instances in the statement of the case "record references supporting each statement of fact or mention of court ... proceedings." Counsel is advised that *each* statement of fact or court proceedings in the brief shall have a record reference. Employer's counsel is warned that future non-compliance with HRAP 28(b)(3) may result in sanctions against him.

Both counsel are advised to read HRAP Rule 28 and to note that "Statement of Questions Presented" is no longer required.

tion award for this injury; however, the record does show that on October 1, 1985, Ermocida and Conoco entered into "Stipulations [sic] with Request for Award" (the Stipulation) before the Workers' Compensation Appeals Board of the State of California. The Stipulation stated that Ermocida's on-the-job injury "caused permanent disability of 46%, for which indemnity is payable at $70.00 per week beginning 4 days after rehab TD ends, in the sum of $15,172.50, less credit for such payments previously made."

On November 16, 2001, while employed by Destination Resorts Hawai'i, Inc. (Destination Resorts) in Hawai'i, Ermocida again "sustained a personal injury to the low back by accident arising out of and in the course of employment." Ermocida filed a workers' compensation claim with Destination Resorts. Destination Resorts forwarded the claim to its workers' compensation carrier, Brandvold Associates, Inc. (hereinafter, Destination Resorts and Brandvold Associates will collectively be known as Employer). A hearing before the State of Hawai'i Department of Labor and Industrial Relations, Disability Compensation Division (Disability Compensation Division) was convened on September 18, 2002 "to determine the nature and extent of [Ermocida's] disability and to determine further liability for medical care." At the hearing, Ermocida

acknowledge[d] having sustained an earlier back injury, while employed in California,

on December 29, 1982. [Ermocida] state[d] that, although he was awarded $15,172.50 for 46% permanent disability resulting from that accident, this cannot be deducted from his award for permanent disability[ ] on this case[ ] because the 1982 injury did not occur in Hawaii. [Ermocida] specifically state[d] that awards for injury in California cannot be compared with those for injuries which occur in Hawaii, because the California average weekly wages, and their method of calculating benefits, is [sic] different from that utilized in Hawaii.

On October 15, 2002, the Director of the Disability Compensation Division filed a Decision, in which the Director determined that Ermocida

suffered 15% permanent partial disability of the whole person, following this accident. Although the claimant suffered an earlier work injury, that injury occurred in the state of California and was not covered by Chapter 386, HRS. It is, therefore, determined that the offset provisions of Section 386–33(1), HRS, do not apply in this case.

The Director decided that "[p]ursuant to Section 386–32(a) [(Supp.2004) [3]], HRS, said employer shall pay to claimant weekly compensation of $346.68 for 15% permanent partial disability of the whole person beginning November 17, 2001, for 73.8422 weeks, for a

---

**3.** HRS § 386–32(a) (Supp.2004) provides in relevant part:

§ **386–32 Partial disability.** (a) Permanent partial disability. Where a work injury causes permanent partial disability, the employer shall pay the injured worker compensation in an amount determined by multiplying the effective maximum weekly benefit rate prescribed in section 386–31 by the number of weeks specified for the disability as follows:

. . . .

Other cases. In all other cases of permanent partial disability resulting from the loss or loss of use of a part of the body or from the impairment of any physical function, weekly benefits shall be paid at the rate and subject to the limitations specified in this subsection for a period that bears the same relation to a period named in the schedule as the disability sustained bears to a comparable disability named in the schedule. In cases in which the permanent partial disability must be rated as a per-

centage of the total loss or impairment of a physical or mental function of the whole person, the maximum compensation shall be computed on the basis of the corresponding percentage of the product of three hundred twelve times the effective maximum weekly benefit rate prescribed in section 386–31.

Payment of compensation for permanent partial disability. Compensation for permanent partial disability shall be paid in weekly installments at the rate of sixty-six and two-thirds per cent of the worker's average weekly wage, subject to the limitations on weekly benefit rates prescribed in section 386–31.

Unconditional nature and time of commencement of payment. Compensation for permanent partial disability shall be paid regardless of the earnings of the disabled employee subsequent to the injury. Payments shall not commence until after termination of any temporary total disability that may be caused by the injury.

total of $25,599.60." (Footnote not in original.)

On October 18, 2002, Employer filed an appeal to the LIRAB from the October 15, 2002 Decision. On October 31, 2002, Employer filed a Motion for Partial Stay of Payments with the LIRAB. In its motion, Employer argued that (1) the plain language of HRS § 386–33(a)(1) required that Ermocida's permanent partial disability award be offset by the amount of his prior compensable injury and (2) the LIRAB should ascertain and give effect to the legislature's intent in enacting HRS § 386–33(a)(1).

On November 12, 2002, Ermocida filed his opposition memorandum to the Motion for Partial Stay of Payments. In his memorandum, Ermocida argued that (1) Employer failed to demonstrate that Destination Resorts would suffer irreparable damage and failed to make a strong showing that Destination Resorts would most likely prevail on the merits and (2) the Department of Labor would exceed its jurisdiction if it were to offset an out-of-state permanent partial disability award from a Hawai'i compensable work injury. On November 15, 2002, the LIRAB granted Employer's Motion for Partial Stay of Payments.

On October 15, 2003, Employer filed a Motion for Summary Judgment before the LIRAB. In its motion, Employer argued that "the plain language of HRS § 386–33(a)(1) makes it clear that Claimant's permanent partial disability award must be offset by the amount of his previous California award." Employer also argued that the LIRAB should give effect to the Hawai'i legislature's intent in enacting HRS § 386–33(a)(1). In support of the latter argument, Employer noted that

HRS § 386–33(a)(1) was part of a major workers' compensation reform enacted by the Hawaii State Legislature in 1995. This section was part of H.B. No. 2133 entitled "A BILL FOR AN ACT RELATING TO WORKERS' COMPENSATION REFORM." The Conference Committee Report No. 112, dated April 28[,] 1995 provided in pertinent part:

The purpose of this bill is to amend Hawaii's workers' compensation and insurance laws to *improve efficiency and cost-effectiveness in the workers' compensation system.* (Emphasis added.)

Amongst the various reforms was the offset provision[,] and the Conference Committee Report No. 112 provided in pertinent part:

For cases on or after July 1, 1995, providing that in successive injury cases where the claimant's entire permanent partial disability is due to more than one compensable injury, *the offset of the award for the subsequent injury be offset by the amount awarded for the prior compensable injury.* (Emphasis added.)

Employer claimed the reports showed that "the purpose of the legislation was to 'improve efficiency and cost-effectiveness' of the workers' compensation system, by[,] among other things, allowing for an offset of the amount of permanent disability benefits awarded for any 'prior compensable injury.'" If the offset were applied, Employer posited that it would be "liable for the difference of the permanent partial disability benefits of $10,427.10 ($25,599.60–$15,172.50)."

On November 5, 2003, Ermocida filed his opposition to the Motion for Summary Judgment and a Cross–Motion for Summary Judgment, in which he argued:

To imply that the legislature meant for prior non-Hawaii compensation awards to be considered under § 386–33 simply because the words "in Hawaii" are missing, is illogical considering the territoriality of the statute as a whole.... [T]he entire workers' compensation statute (chapter 386) is limited solely to Hawaii cases. It is more consistent with the rules of statutory construction to say that had the legislature meant for non-Hawaii compensation awards to be considered (especially in one particular section) thereby creating an exception to the entire scheme, they have done so. *Bumanglag v. Oahu Sugar Co. Ltd.,* 78 Hawai'i 275, 280, 892 P.2d 468, 473 (1995). Since they did not, the only conclusion that can be reached is that the offset provisions of § 386–33 are applicable

only to prior disability awards rendered *in Hawaii* pursuant to chapter 386.

(Emphasis in original.)

The LIRAB filed its Decision and Order on November 25, 2003. The LIRAB granted Employer's Motion for Summary Judgment and denied Ermocida's Cross–Motion for Summary Judgment. The LIRAB concluded:

> There is no language in § 386–33(a)(1) that limits its application to prior awards for in-state injuries only. Since there is no dispute that Claimant received an award of PPD [permanent partial disability] in a prior work injury and that his current PPD is due to more than one compensable work injury, applying the plain and unambiguous language in HRS § 386–33(a)(1), we conclude that the offset provision applies to Claimant's prior out-of-state PPD award. Accordingly, Claimant's award of PPD in this case shall be offset by the award he received in the California injury.

Claimant argues that the Board has no jurisdiction to apply the offset provision to the California award, because under HRS § 386–6 [1993 4], Chapter 386 applies only to work injuries sustained within the state. We disagree.

Because we are not reviewing or adjudicating the merits of the California award, our application of HRS 386–33(a)(1) to require Claimant's PPD award to be offset by the prior California award is not an unauthorized exercise of jurisdiction and does not run afoul of HRS § 386–6.

(Footnote and bracketed material not in original.)

---

4. HRS § 386–6 (1993) provides:
   **§ 386–6 Territorial applicability.** The provisions of this chapter shall be applicable to all work injuries sustained by employees within the territorial boundaries of the State.
   If an employee who has been hired in the State suffers work injury, he shall be entitled to compensation under this chapter even though the injury was sustained without the State. The right to compensation shall exclude all other liability of the employer for damages as provided in section 386–5. All contracts of hire of employees made within the State shall

## II.

Ordinarily, deference will be given to decisions of administrative agencies acting within the realm of their expertise. The rule of judicial deference, however, does not apply when the agency's reading of the statute contravenes the legislature's manifest purpose. Consequently, we have not hesitated to reject an incorrect or unreasonable statutory construction advanced by the agency entrusted with the statute's implementation.

*Coon v. City and County of Honolulu*, 98 Hawai'i 233, 245, 47 P.3d 348, 360 (2002) (internal quotation marks, citations, and brackets omitted).

Appellate review of a LIRAB decision is governed by HRS § 91–14(g) (1993), which states that:

> Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:
>
> (1) In violation of constitutional or statutory provisions; or
>
> (2) In excess of the statutory authority or jurisdiction of the agency; or
>
> (3) Made upon unlawful procedure; or
>
> (4) Affected by other error of law; or
>
> (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
>
> (6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

be deemed to include an agreement to that effect.

If an employee who has been hired without the State is injured while engaged in his employer's business, and is entitled to compensation for the injury under the law of the state or territory where he was hired, he shall be entitled to enforce against his employer his rights in this State if his rights are such that they can reasonably be determined and dealt with by the director of labor and industrial relations, the appellate board, and the court in this State.

We have previously stated:

. . . .

[Conclusions of Law] are freely reviewable to determine if the agency's decision was in violation of constitutional or statutory provisions, in excess of statutory authority or jurisdiction of agency, or affected by other error of law.

*Igawa v. Koa House Rest.*, 97 Hawai'i 402, 405–06, 38 P.3d 570, 573–74 (2001) (internal quotation marks, citations, and brackets in original omitted) (quoting *In re Water Use Permit Applications*, 94 Hawai'i 97, 119, 9 P.3d 409, 431 (2000)).

## III.

### A. The applicability of the offset provision to out-of-state disability awards.

"Some statutes [such as HRS § 386–33(a)(1)] provide that compensation previously received must be deducted from subsequent awards in certain circumstances, as where an earlier award has been made for partial loss of a particular member, and greater or total loss of the same member is asserted as the result of a subsequent injury." 5 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 92.02(7)(a) at 92–10 (2000 & Supp. 5/04) (footnote omitted). In other words, if an employee

with a pre-existing permanent disability suffers a compensable permanent injury, the employee is entitled to compensation only for the degree of injury that would have resulted from the work-related injury if the pre-existing disability had not existed. The percentage of disability for the subsequent injury is determined by computing the percentage of the entire disability and deducting therefrom the percentage of the previous disability as it existed at the time of the subsequent injury.

2 *Modern Workers Compensation* § 200:25 at 54–55 (Matthew J. Canavan ed., Clark Boardman Callaghan 1993) (footnotes omitted).

Ermocida does not dispute that such an offset provision exists in HRS § 386–33(a)(1), but argues that the offset provision contained in that statute applies only "to a prior disability award rendered pursuant to the State of Hawai'i's worker compensation laws." (Emphasis omitted.) This is because, according to Ermocida, (1) the language in the offset provision is statutorily defined and, thus, not ambiguous; and (2) the jurisdiction granted to the Department of Labor by HRS Chapter 386 does not extend to out-of-state disability awards.

### 1. The language in the offset provision.

■ With regard to his first point, Ermocida contends that in reaching its conclusion, the LIRAB "took the words 'prior compensable injury' out of *all context*." (Emphasis in original.) Ermocida explains that "compensable" is defined in HRS § 386–1 thus: " '*Compensation*' means all benefits accorded *by this chapter* to an employee or the employee's dependents on account of a work injury as defined in this section." (Emphasis in original.) Based on this analysis, Ermocida concludes that "[i]n other words, a *compensable injury* is an injury for which benefits were received pursuant to *Hawai'i's* workers [sic] compensation law." (Emphasis in original.) "A disability award from another state," he continues, "is not an award for which benefits were accorded under Hawai'i law. Consequently, the offset only applies to a prior disability award *rendered pursuant to the State of Hawai'i's worker compensation laws.*" (Emphasis in original.)

"Prior compensable injury" is not defined in Hawaii Revised Statutes or Hawai'i case law. Additionally, there are no Hawai'i cases on point construing "prior compensable injury" or determining whether HRS § 386–33(a)(1) applies to prior, out-of-state disability awards.

Employer argues that the operative phrase in § 386–33(a)(1) is "prior compensable injury." That phrase means "*any* previous injury that contributes to a claimant's entire permanent partial disability." (Emphasis added.) Employer supports its interpretation by arguing that "if the legislature had intended 'prior compensable injury' to mean 'prior compensable injury in Hawai'i' it certainly would have said so." Therefore, ac-

cording to Employer, "[t]he LIRAB correctly held that the plain language of HRS § 386–33(a)(1) requires that [Ermocida's] Hawai'i permanent partial disability award of $25,599.60 be offset by the $15,172.50 he received for his prior compensable injury in California."

*Hassan v. State Workmen's Compensation Commissioner*, 171 W.Va. 566, 301 S.E.2d 197 (1983), provides guidance on this question and is supportive of Employer's position. Hassan injured his back while working in Ohio for his employer. *Id.* at 567, 301 S.E.2d at 198. The Ohio Industrial Commission awarded him a 25% permanent partial disability for the injury. *Id.* at 566–57, 301 S.E.2d at 198. Hassan later reinjured his back while working in West Virginia for the same employer. *Id.* at 567, 301 S.E.2d at 198. The Workmen's Compensation Commissioner of West Virginia granted Hassan "a 40% permanent partial disability award, 35% for orthopedic disability and 5% for psychiatric disability." *Id.* at 566, 301 S.E.2d at 198.

Hassan's employer appealed the Commissioner's award, "contending that [Hassan's] previous 25% permanent partial disability award from the Ohio Industrial Commission constituted a preexisting definitely ascertainable physical impairment to be deducted from [Hassan's] current claim for permanent partial disability." *Id.* at 566–67, 301 S.E.2d at 198. The Workmen's Compensation Appeal Board (Board) agreed with the employer. *Id.* at 567, 301 S.E.2d at 198. After deducting the 25%, the Board also "reduced the total orthopedic award by 2%, resulting in an 8% award" and "increased the Commissioner's psychiatric award from 5% to 10%, resulting in a final permanent partial disability award of 18%." *Id.* at 567, 301 S.E.2d at 198.

In his appeal before the West Virginia Supreme Court of Appeals, Hassan argued, among other things, that "the Board erred in reducing his award by the percentage previously awarded in Ohio." *Id.* The Supreme Court of Appeals held that since Hassan's 25% permanent partial disability award in Ohio constituted a "definitely ascertained and rated injury," the 25% must be deducted

from Hassan's permanent partial disability award in West Virginia. *Id.* at 568, 301 S.E.2d at 199.

*Keil v. Industrial Commission*, 331 Ill. App.3d 478, 771 N.E.2d 626, 264 Ill.Dec. 922 (2002)—a decision we find to be persuasive—also supports Employer's position on this point. Keil "sought benefits pursuant to the Workers' Compensation Act (Act) for injuries sustained while in the employ of United Parcel Service (UPS)." *Id.* at 479, 771 N.E.2d at 627, 264 Ill.Dec. at 923 (citation omitted). While performing his duties at work, Keil fell down on his right knee. *Id.* The fall caused an "aggravation of an underlying severe degenerative osteoarthritis of the patellofemoral joint of the right knee." *Id.* As a result, Keil had to undergo total knee replacement. *Id.*

The Appellate Court of Illinois summarized the facts:

> The arbitrator awarded Keil 65 weeks of temporary total disability (TTD) benefits, finding that he was temporarily totally disabled .... The arbitrator further found Keil had sustained a 50% loss of use of the right leg, and awarded permanent partial disability benefits pursuant to section 8(e) of the Act. At arbitration, Keil had testified that he had filed a prior workers' compensation claim for a right knee injury in Iowa in 1995. This injury also occurred while in the employ of UPS, the same employer in the present case. Pursuant to a settlement agreement, he was awarded a 17–1/2 percent loss of use of the right leg in that case and received $21,000. The arbitrator declined to give UPS a credit for the out-of-state award, finding that the credit for prior losses under section 8(e) is limited to those permanent partial losses as defined under the Illinois Act. The arbitrator reasoned that giving credit for permanent partial losses as defined under the workers' compensation statutes of other states would require the Commission to interpret and apply the laws of other states in determining an appropriate section 8(e) credit. The Industrial Commission (Commission) reversed the decision of the arbitrator and applied a credit to the award, finding that the plain language of

section 8(e)(17) does not preclude credit for an out-of-state award. The decision of the Commission was confirmed by the circuit court of Peoria County. 331 Ill.App.3d at 479, 771 N.E.2d at 627–28, 264 Ill.Dec. at 923–24.

On appeal, Keil argued, among other things, that the court could not "assume that the 17–1/2% 'partial loss' in the Iowa award was determined, rated and ascertained under the same definitions of 'partial loss' under the Act." *Id.* at 480, 771 N.E.2d at 628, 264 Ill.Dec. at 924. However, the Appellate Court of Illinois affirmed the Commission's findings, stating that "[t]he clear and unambiguous language of Section 8(e)(17) is devoid of any condition or limitation that compensation paid for the prior injury was paid pursuant to a claim under the Illinois Act." 331 Ill.App.3d at 481, 771 N.E.2d at 628–29, 264 Ill.Dec. at 924–25. The court went on to note that "the statute's only requirement is that compensation has been paid for the prior injury." *Id.* at 481, 771 N.E.2d at 629, 264 Ill.Dec. at 925.

The court added:

We believe that the language employed in the statute—"such loss shall be taken into consideration and deducted from any award for the subsequent injury"—was used by our legislature in contemplation that different states might ascertain and compensate injuries differently. The statute does not restrict the Commission as to how it should determine the proper amount of credit. Instead, it requires only that the Commission take the prior loss into consideration and deduct it from any subsequent award. This gives the Commission the necessary flexibility to address each situation on a case-by-case basis in order to achieve the remedial purpose of the statute while achieving a result that is just and equitable.

*Id.*

## 2. Jurisdiction granted to the Department of Labor by HRS Chapter 386 extends to out-of-state disability awards.

■ Ermocida asserts that the Hawai'i Department of Labor does not have jurisdiction over out-of-state disability awards. This, he argues, is because the legislature made clear that all of the provisions of HRS Chapter 386 apply to Hawai'i workers and Hawai'i employers. However, the third paragraph of HRS § 386–6 states:

### § 386–6. Territorial applicability.

. . . .

If an employee who has been hired *without the State* is injured while engaged in his employer's business, and is entitled to compensation for the injury under the law of the state or territory where he was hired, *he shall be entitled to enforce against his employer his rights in this State if his rights are such that they can reasonably be determined and dealt with by the director of labor and industrial relations, the appellate board, and the court in this State.*

(Emphasis added.) In the scenario contemplated by that provision, at least, the LIRAB would have jurisdiction over out-of-state compensation awards.

Furthermore, the United States Supreme Court held in a landmark workers' compensation case, *Industrial Commission of Wisconsin v. McCartin*, 330 U.S. 622, 67 S.Ct. 886, 91 L.Ed. 1140 (1947), that when an award is "final and conclusive only as to rights arising in [one state], [another state] is free under the full faith and credit clause to grant an award of compensation in accord with its own laws." *Id.* at 630, 67 S.Ct. at 890–91.

In *McCartin*, Kopp, a resident of Illinois, worked for McCartin, also a resident of Illinois. *Id.* at 623, 67 S.Ct. at 887. Pursuant to a contract made in Illinois, Kopp worked for McCartin on a building job in Wisconsin. *Id.* Kopp commuted between his home in Illinois and his job in Wisconsin. *Id.* While on the job in Wisconsin, Kopp injured his left eye. *Id.* After his injury, Kopp

filed an application for adjustment of claim with the Industrial Commission of Wisconsin. McCartin and his insurance carrier entered an objection to the jurisdiction of the Wisconsin Commission to hear the claim. Then ... Kopp filed an application for adjustment of claim with the Industrial

Commission of Illinois, in which the general nature of the dispute was given as "Whether Illinois or Wisconsin has jurisdiction in my case."

*Id.* at 623–24, 67 S.Ct. at 887. The Wisconsin Commission made it known that Kopp was entitled under Wisconsin law to "proceed under the Illinois Workmen's Compensation Act and thereafter claim compensation under the Wisconsin Workmen's Compensation Act, with credit to be given for the amount paid him pursuant to the Illinois Act." *Id.* at 624, 67 S.Ct. at 887–88 (citations omitted).

Kopp and McCartin thereafter entered into a settlement contract in which the parties agreed that Kopp was to be paid $2,112 in "full and final settlement of any and all claims arising out of Kopp's injury by virtue of the Illinois Workmen's Compensation Act." *Id.* at 624, 67 S.Ct. at 888. The contract also stated that the settlement did not affect any rights Kopp might have under the Workmen's Compensation Act of Wisconsin. *Id.* The Illinois Commissioner approved the settlement. *Id.* at 625, 67 S.Ct. at 888.

However, before Kopp received his settlement award, the Supreme Court's decision in *Magnolia Petroleum Co. v. Hunt,* 320 U.S. 430, 64 S.Ct. 208, 88 L.Ed. 149 (1943), was entered. *McCartin,* 330 U.S. at 625, 67 S.Ct. at 888. As the Court in *McCartin* explained:

> The Court [in *Magnolia* ] found that the compensation award under the Texas Workmen's Compensation Law, was made explicitly in lieu of any other recovery for injury to the employee, precluding even a recovery under the laws of another state. And since the Texas award had the degree of finality contemplated by the full faith and credit clause, it was held that Louisiana was constitutionally forbidden from entering a subsequent award under its statute.

*McCartin,* 330 U.S. at 626, 67 S.Ct. at 889 (citations omitted). Relying on the decision in *Magnolia,* McCartin and the insurance carrier filed an amended answer, "contending that under the full faith and credit clause the Wisconsin proceedings were barred by the award and payment under the Illinois Act." *McCartin,* 330 U.S. at 625, 67 S.Ct. at 888. However, the Wisconsin Commission overruled McCartin's objection and ordered the payment of certain benefits to Kopp, after giving credit for the amount paid under the Illinois Act. *Id.*

Citing the authority of *Magnolia,* the Circuit Court for Dane County, Wisconsin, set aside the Wisconsin Commission's order. *McCartin,* 330 U.S. at 625, 67 S.Ct. at 888. On appeal, the Supreme Court of Wisconsin affirmed the circuit court's judgment on the same authority. *Id.* at 625–26, 67 S.Ct. at 888. The United States Supreme Court then granted certiorari to "determine the applicability of the full faith and credit clause, as interpreted in the Magnolia Petroleum Co. case, to the facts of [*McCartin*]." *Id.* at 626, 67 S.Ct. at 888.

The Supreme Court noted the "absence of any provision or construction of the Illinois Workmen's Compensation Act forbidding an employee from seeking alternative or additional relief under the laws of another state." *McCartin,* 330 U.S. at 628, 67 S.Ct. at 889–90. The Court stated that the facts of the Illinois award in *McCartin* were different in their nature and effect from the Texas award in *Magnolia* because the Illinois award was pursuant to a settlement contract, which read: "This settlement does not affect any rights that applicant may have under the Workmen's Compensation Act of the State of Wisconsin." *McCartin,* 330 U.S. at 627 & 629, 67 S.Ct. at 889 & 890. The Court went on to state that

> when the reservation in this award is read against the background of the Illinois Workmen's Compensation Act, it becomes clear that the reservation spells out what we believe to be implicit in that Act— namely, that an Illinois workmen's compensation award of the type here involved does not foreclose an additional award under the laws of another state.

*Id.* at 630, 67 S.Ct. at 890.

In the instant case, Ermocida's California award contains neither a prohibition nor an explicit allowance of a subsequent workers' compensation award from another state.

Notwithstanding Ermocida's argument regarding the Department of Labor's jurisdiction over out-of-state disability awards, given

the foregoing the LIRAB did have jurisdiction to offset Ermocida's Hawai'i award by the amount he had already received for the prior related injury in California.

### 3. Not applying the offset would result in double recovery.

■ Putting aside matters of statutory construction and jurisdiction, not allowing the offset in the instant case would result in a double recovery on the part of Ermocida. "[T]he employee is entitled to compensation only for the degree of injury that would have resulted from the work-related injury if the pre-existing disability had not existed." 2 *Modern Workers Compensation* § 200:25 at 54. As Employer notes in its answering brief, the Supreme Court of California in *Sea–Land Service, Inc., v. Workers' Compensation Appeals Board,* 14 Cal.4th 76, 925 P.2d 1309, 58 Cal.Rptr.2d 190 (1996), stated:

> A basic premise of compensation law is that there shall be but a single recovery of benefits on account of a single injury or disability; to permit a double recovery would be to place a double burden on industry and encourage malingering; the right to recovery of compensation from more than one source is subject to the rule that a credit shall be allowed against an award for any payment to the extent that it permits a double recovery.

*Id.* at 82, 925 P.2d at 1311, 58 Cal.Rptr.2d at 192.

In addition, this court noted in *Crowley v. City and County of Honolulu,* 100 Hawai'i 16, 58 P.3d 74 (App.2002), that "[i]n 1995, the legislature passed sweeping amendments to HRS chapter 386, in an effort to improve the cost-effectiveness and efficiency of Hawai'i's workers' compensation law." *Crowley,* 100 Hawai'i at 19, 58 P.3d at 77 (citation and footnote omitted). More specifically, the legislature amended HRS § 386–33(a)(1) to avoid the kind of double recovery described in the following example:

> [I]f Claimant X had a work injury to his back which resulted in an award of 5% PPD [permanent partial disability] of the whole person, then suffered another work-related injury which results in a PPD award consisting of 10% of the whole per-

son, Claimant X would receive compensation based on 5% PPD for the first work injury and compensation based on 10% for the second injury. If Claimant X subsequently suffers a third work injury to his back which results in 11% PPD of the whole person, he would receive compensation based on 11% PPD for the third injury. A fourth work-related injury to his back resulting in 15% PPD of the whole person would consequently entitle Claimant X to compensation based on 15% PPD. Thus, under prior law, Claimant X would have received total compensation equal to 41% PPD (5% + 10% + 11% + 15%) despite the fact that following the last injury, the cumulative effects of the four work injuries resulted in 15% PPD of the whole person.

*Crowley,* 100 Hawai'i at 19, 58 P.3d at 77 (brackets in original omitted).

In the instant case, if the offset provision of HRS § 386–33(a)(1) were not applied to Ermocida's Hawai'i award, Ermocida would be given a greater recovery than that to which he is entitled.

Ermocida argues that his "prior disability award was based on a set of values different from those espoused by Hawai'i in Chapter 386." "Taking into account this prior award," he continues, "deprives him (and others similarly situated) of the right to have his Hawai'i disability award rendered wholly in accordance with [HRS] §§ 386–31 and 386–32." On the other hand, Employer argues:

> Because the Hawai'i offset provision is calculated using the amount of the previous award in dollar terms, rather than percentage terms, Claimant will get the full economic benefit of his permanent partial disability award in Hawai'i. Regardless of how Claimant's prior award was calculated or what theory of recovery was applied, only the actual dollar amount of the award will be deducted from the award for his current, Hawai'i injury. Thus, Claimant's treatment will be no different than a claimant whose prior injury was compensated under an earlier version of Hawai'i workers' compensation law or the lower Hawai'i compensation rate in place at the time of the prior injury. *See Crow-*

*ley,* 100 Hawai'i at 20, 58 P.3d at 78 (under dollar-based offsets, "the claimant is awarded the compensation to which he or she is entitled—no more, no less").

This court will not be drawn into the debate between Ermocida and Employer regarding how the calculations of the California and Hawai'i awards compare because the issues before us do not concern the amount of Ermocida's Hawai'i award, but whether the LIRAB erred in applying the HRS § 386–33(a)(1) offset to an out-of-state award.

This court concludes that HRS § 386–33(a)(1) lacks any condition or limitation that compensation for the prior injury must have been paid pursuant to a claim under the Hawai'i workers' compensation law. Section 386–33(a)(1) merely states that "in successive injury cases where the claimant's entire permanent partial disability is due to more than one compensable injury, the amount of the award for the subsequent injury shall be offset by the amount awarded for the prior compensable injury."

## IV.

The Decision and Order filed on November 25, 2003 by the Labor and Industrial Relations Appeals Board is affirmed.